UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Tampa Division

| | |
|---|---|
| THOMAS CLINE, on behalf of himself and all others similarly situated, | |
| Plaintiff, | |
| v. | Case No._____ |
| MCBC MEDICAL DELIVERY SERVICES LLC d/b/a MEDICAL DELIVERY SERVICES INC., | COLLECTIVE ACTION AND CLASS ACTION DEMAND FOR JURY TRIAL |
| Defendant. | |

## COMPLAINT

Plaintiff Thomas Cline , individually and on behalf of all others similarly situated ("Plaintiffs"), respectfully moves for judgment against MCBC Medical Delivery Services LLC d/b/a Medical Delivery Services Inc. ("MDS" or Defendant") as follows:

## I.    SUMMARY OF ACTION

1.    This is an action for unpaid minimum wages, overtime, and employment benefits in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq. ("FLSA"), the Virginia Minimum Wage Act, Va. Code § 40.1-28.8 et seq. ("VMWA"),  the Virginia Overtime Wage Act, Va. Code § 40.1-29.2 ("VOWA"), and the Virginia Misclassification Law, Va. Code § 40.1-

1

28.7:7 ("VML"), and related claims.

2.      Plaintiff brings this action as a "hybrid" class and collective action for unpaid overtime and misclassification under both federal and state law. Plaintiff brings the collective action under 29 U.S.C. 216(b), Va. Code §§ 40.1-29(J) and 40.1-29.2, and the class action under Federal Rule of Civil Procedure 23 for the VMWA, VOWA and VML claims.

3.      Defendant is in the business of transporting radioactive medical materials.

4.      Plaintiff and similarly situated employees transport those materials, including across state lines, on behalf of the Defendant. ("Delivery Drivers").

5.      Plaintiff contends that Defendant has violated and continues to violate the FLSA and VOWA by having a policy or practice of failing to pay overtime compensation to Plaintiffs and similarly situated employees for work in excess of 40 hours per week.

6.      Plaintiff also contends that Defendant has violated and continues to violate the FLSA and VMWA by having a policy or practice of failing to pay minimum wages compensation to Plaintiffs and similarly situated employees. This violation results from Defendant's failure to reimburse Plaintiff and similarly situated employees for the costs of performing Defendant's work. These costs include gas, vehicle maintenance and depreciation, and insurance,

among other costs. When these costs are subtracted from the wages paid to Plaintiff and similarly situated employees, in at least some workweeks, their effective hourly pay falls below the required minimum wage. *See* 29 C.F.R. § 531.35.

7.      Plaintiff further contends that Defendant has violated and continues to violate the VML by having a policy or practice of misclassifying Plaintiff and similarly situated workers as independent contractors rather than employees.

8.      Defendants' policies and/or practices comprising the alleged violations are ongoing.

9.      The **FLSA Collective** is made up of all past and present Delivery Drivers of Defendant who, at any time from the date three years prior to the filing of this action through the present and ongoing (the "Relevant Period"), did not drive or load vehicles weighing more than 10,001 pounds, and were classified as non-employees.

10.      Plaintiff, on behalf of himself and all similarly situated employees, seeks unpaid overtime wages, minimum wages, liquidated damages, pre- and post-judgment interest, attorneys' fees and costs, and all relief allowed by law arising out of the Defendant's FLSA violations.

11.      The **VOWA/VMWA Class** is made up of all members of the FLSA Collective who worked for Defendant in Virginia at any time during the

Relevant Period and who were classified as non-employees.

12.     The **VML Class** is made up of all Delivery Drivers of Defendant who at any time during the Relevant Time Period worked for Defendant in Virginia and were classified as non-employees.[1]

13.     Plaintiffs, on behalf of themselves and all similarly situated employees, seek unpaid overtime wages, liquidated damages, pre- and post-judgment interest, attorneys' fees and costs, employment benefits, and all relief allowed by law arising out of the Defendant's FLSA, VOWA, and VML violations.

## II.    JURISDICTION AND VENUE

14.     This Court has jurisdiction over the FLSA claims pursuant to 29 U.S.C. § 216(b) in that the Plaintiffs may bring this action in any appropriate United States District Court.

15.     The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as these claims are so related to the FLSA claims they form part of the same case or controversy.

16.     Venue is proper for this Court pursuant to 28 U.S.C. § 1391 and

---

[1] It is believed that putative members of the VOWA/VMWA and VML classes will be substantially similar, perhaps identical.  Plaintiff reserves the right to seek to amend this Complaint and/or move for certification based on refined or simplified definitions should the facts support same.

Local Rule 1.04(b) since Defendant had its headquarters in this Division during all or the vast majority of past times relevant to this action, including for more than three years prior to January 2026.

17.    Defendant is subject to personal jurisdiction in Florida.

## III.    PARTIES

18.    Plaintiff Thomas Cline is a resident of Virginia who has worked for Defendant as a Delivery Driver from approximately September 2024 to the present. At all times relevant, this Plaintiff was an "employee" as defined in the FLSA and state law.

19.    Defendant MCBC Medical Delivery Services LLC d/b/a Medical Delivery Services Inc. is a Florida limited liability company (according to filings with the State of Florida Division of Corporations), and at least until late January of 2026, had its principal office at 7861 Woodland Center Blvd., Tampa, FL 33614.[2]  At all times relevant, this Defendant is and was an "employer" of Plaintiff and all similarly situated individuals as defined by the FLSA and state law.

20.    Defendant's gross annual sales made, or business done, is $500,000.00 or greater. Defendant operates in interstate commerce by, among

---

[2] According to filings with the Florida Division of Corporations, it appears that Defendant may have moved its headquarters to Westerville, Ohio on or about January 23, 2026.  According to the same page, the Company remains a Florida, LLC.  (last visited on January 30, 2026).

other things, buying and/or selling goods and transacting business in multiple states, and/or by having employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce in multiple states. Defendant's employees, including Plaintiff and similarly situated employees, were engaged in commerce and/or the production of goods for commerce.

**IV.    FACTUAL ALLEGATIONS**

21.    Defendant is in the business of transporting radioactive medicine. *See* https://medicaldeliveryservicesinc.com/ last accessed 1/29/2026.

22.    Defendant's website markets itself as, "Today, MDS is recognized as a leading national carrier specializing in the legal and safe transportation of radiopharmaceuticals for all major Nuclear Medicine manufacturers and shippers, delivering to hospitals and clinics on their behalf. … As one of the oldest carriers in this field, MDS maintains its leadership position in transporting radiopharmaceuticals with an independent contractor driver network that handles more than 525,000 pieces while traveling more than 14 million miles annually." https://medicaldeliveryservicesinc.com/our-story/ last accessed 1/29/2026.

23.    Plaintiff and other Delivery Drivers were hired to transport these medical materials. Plaintiff asserts that they are employees of Defendant, not independent contractors.

24.     Delivery Drivers picked up the medicine at a facility/plant and transported it to hospitals, clinics, or other similar locations, following Defendant's instructions and procedures.

25.     One such facility is located in Charlottesville, Virginia. Plaintiff and other Delivery Drivers transported the medicine from the Charlottesville facility to hospitals in West Virginia, North Carolina, Maryland, the District of Columbia, and possibly elsewhere.

26.     Delivery Drivers were paid pursuant to standardized written pay rate schedules and were subject to Defendant's boilerplate "Owner/Operator Agreement" along with a constellation of other Defendant issued forms purporting to govern the relationship between Delivery Drivers and the Defendant.

27.     The pay rate schedules provided for specified pay rates primarily calculated per mile and per stop, as well as compensation for waiting time and attempted but cancelled deliveries.

28.     Upon information and belief, the specified standardized mileage rates were subject to modest regional variations. However, the mileage rates and overall pay were insufficient to adequately reimburse Delivery Drivers for the costs of performing Defendants' work, resulting in the wage payment violations described herein.

29.     For example, Plaintiff was paid $0.55 per mile, $7.00 per stop, $11.00 for waiting time, $15.00 for an attempted delivery (cancelled outside), with the possibility of reimbursement for tolls and parking, or fuel surcharges. Primarily, he was paid the per mile and per stop rates. Plaintiff typically made around four stops per day. Other Deliver Drivers were paid similarly.

30.     Delivery Drivers use vehicles weighing less than 10,001 pounds, typically their personal vehicles.

31.     Plaintiff and other Delivery Drivers worked in the transportation industry.

32.     Plaintiff and other Delivery Drivers handled goods that travel interstate.

33.     Plaintiff and other Delivery Drivers played a direct and necessary role in the free flow of goods across borders.

34.     Plaintiff and other Delivery Drivers picked up the medical materials at a manufacturing facility and delivered the materials to their final destination.

35.     In performing Defendant's work, Delivery Drivers received their job instructions and supervision directly from Defendant and its managers. Defendant additionally assigns Delivery Drivers with their routes and jobs.

36.     Delivery Drivers were and are economically dependent on Defendant.

37.     Delivery Drivers are not in business for themselves.

38.     In an effort to reduce its labor costs at the expense of Delivery Drivers, Defendant knowingly misclassified Delivery Drivers as independent contractors.

39.     In reality, Delivery Drivers were and are employees of Defendant.

40.     **Nature and degree of control**. Defendant exercised a high level of control over the manner in which Delivery Drivers' work was performed. For example, Defendant received orders and contracts from its clients and assigned the attendant work to Delivery Drivers at Defendant's sole discretion. Defendant controlled which manufacturers were worked with, which routes to drive, the process and procedures for transporting the medicine, assigned Delivery Drivers to transport the medicine on those routes, instructed Delivery Drivers on how to handle the medicine, and determined the amount Delivery Drivers were paid for said work.

41.     Due to the radioactive nature of the medicine that Defendant is typically hired to transport, i.e., medicine that has a very short useable life before expiring, it must picked up from the facility and delivered to the hospital or clinic within tight time parameters. Providing this service to clients requires Defendant to exercise an exceptionally high level of control over its Delivery Drivers who were tasked with picking up and transporting the medicine.

42.     Among other examples, Defendant exercised the following control over Delivery Drivers:

a.     Defendant hired and fired Delivery Drivers.

b.     Defendant required Delivery Drivers to take drug tests.

c.     Defendant required Delivery Drivers to undergo background checks and annual DMV license checks.

d.     Defendant assigned Delivery Drivers their work each day.

e.     Defendant instructed Delivery Drivers how to do their work.

f.     Defendant set Delivery Drivers' work locations and start times.

g.     Defendant set Delivery Drivers' delivery times and mandated times for Drivers to return materials to manufacturer facilities.

h.     Defendant disciplined and docked the pay of Delivery Drivers, including Plaintiff, for not following Defendant's instructions, for example when Delivery Drivers do not return empty containers to the facility at night as instructed, and instead wait until the morning to do so.

i.     Defendant often required Delivery Drivers to work long hours.

j.     Defendant's managers closely supervised the work of Delivery Drivers.

10

k.    Defendant determined the nature, locations, work hours, and extent of the transportation and related work that Delivery Drivers were to perform each day.

l.    Defendant determined Delivery Drivers' rates of pay.

m.    Defendant prohibited Delivery Drivers' from resequencing or deviating from their assigned routes, and required Delivery Drivers to report to Defendant if there was any forced deviation from the assigned route, or any detours on the assigned roads.

n.    Defendant required Delivery Drivers to notify Defendant's dispatch department and supervisor when they were more than 7 minutes late based on assigned delivery times, and to provide periodic estimated times of arrival.

o.    Defendant continuously tracked Delivery Drivers via GPS on both Defendant's dispatch application and equipment provided by Defendant's customers.

p.    Defendant required Delivery Drivers to use an application, provided by Defendant (called ecMobile) to track their progress and locations, photograph manifests, and document deliveries, by taking and uploading photos to the application per Defendant's instructions.

q.    Defendant prohibited Delivery Drivers from carrying

passengers while driving for Defendant.

r.    Defendant required Delivery Drivers to return containers to Defendant's customer locations within a timeframe assigned by Defendant, and prohibited Delivery Drivers from transferring return materials and containers between themselves; Defendant terminated Delivery Drivers for failing to follow these kinds of instructions.

s.    Defendant routinely threatened to terminate Delivery Drivers if they did not follow Defendant's guidelines, or for reporting late for pickups, even if the loads were subsequently delivered on time.

t.    Defendant at times punished Delivery Drivers for returning non-essential loads late, based on deadlines set by Defendant, by docking their pay or not paying for all work performed.

u.    Defendant required Delivery Drivers to use year 2010 or newer vehicles.

v.    Defendant required Delivery Drivers to follow their detailed written protocols and procedures for performing Defendant's work, including Defendant's four-step delivery check for making deliveries.

43.    **Profit or loss**. Delivery Drivers had no opportunity for profit or loss depending on managerial skill. They were simply paid rates (primarily, per-mile and per-stop rates) as set by the Defendant.

44. **Investment in equipment or materials**. Delivery Drivers drove their own personal vehicles and sometimes provided their own hand trucks. They provided little or no investment in equipment or material specific to Defendant's work. Defendant provided all other equipment necessary for Delivery Drivers to perform its work, including the equipment for packaging and handling the medical materials, the software and applications for tracking and transporting the medicine, containers, spill kits, and other tools and equipment.

45. Delivery Drivers typically drove their personal vehicles (cars, pickup trucks, minivans, and other small vehicles) between the facility/plant and hospitals throughout the day as assigned by Defendant.

46. Delivery Drivers did not employ other workers.

47. Defendant prohibited Delivery Drivers from subcontracting out their assigned work.

48. **Degree of skill**. The work performed by Delivery Drivers was simple, manual blue-collar work that did not require a high degree of skill or a special skill. They loaded the materials into their vehicles at the plants and drove them to the hospitals, as assigned by Defendant.

49. **Permanence and duration of working relationship**. The working relationships between Delivery Drivers and Defendant often had a substantial level of permanence. Delivery Drivers typically worked for Defendant for

extended periods of time and often worked for Defendant for numerous years.

50.     Plaintiff has worked for Defendant for more than one year.

51.     Delivery Drivers' work for Defendant was generally a full-time job.

52.     Delivery Drivers often worked 5 or more days per week, and 40 or more hours or more per week for Defendant.

53.     **Degree integral to employer's business**. The services rendered by Delivery Drivers are an integral part of Defendant's business. Clients hire Defendant to transport radioactive medicine, and Delivery Drivers perform that work on Defendant's behalf.  Defendant required Delivery Drivers to wear uniforms and ID badges with Defendant's name branded on them.

54.     Defendant misclassified Plaintiff and other Delivery Drivers as independent contractors, even though they were really Defendant's employees.

55.     Plaintiff worked for Defendant as a Delivery Driver from approximately September 2024 to the present.

56.     Throughout his employment with Defendant, Plaintiff typically worked from approximately 7:30 am to 2:30 pm or later Monday through Friday, plus some weekends. Other Delivery Drivers worked differing schedules, but worked a similar quantum of hours, totaling more than 40 hours per week in at least some workweeks. For example, Drivers sometimes worked 4:00 am to 3:00 pm, Monday through Friday, plus every other Saturday.

14

57.     Despite working more than 40 hours in at least some workweeks, Plaintiff and his fellow Delivery Drivers did not get paid overtime at a time and a half rate for hours worked over 40.

58.     For example, for the workweek ending October 18, 2025, Plaintiff worked at least 40.75 hours. Even though Plaintiff worked more than 40 hours this week, Defendant did not pay him overtime compensation.

59.     Instead, Plaintiff and his fellow Delivery Drivers were paid primarily mileage rates and per-stop rates, without any overtime compensation when they worked more than 40 hours in a week.

60.     As noted above, Delivery Drivers were paid pursuant to standardized rate schedules.

61.     Defendant paid Delivery Drivers primarily mileage rates and per-stop rates, without any overtime compensation.

62.     Defendant required at least some Deliver Drivers to have "occupational accidental insurance." It obtained this insurance for Delivery Drivers, then took the cost of this insurance out of their pay.

63.     Defendant did not / does not fully reimburse Delivery Drivers for the costs it requires them to bear in performing their work for Defendant. These unreimbursed costs include gas, vehicle maintenance, taxes, depreciation, and insurance, among others. When these costs are subtracted from the wages paid to

Plaintiff and similarly situated employees, in at least some workweeks, their effective hourly pay still falls below the required minimum wages. *See* 29 C.F.R. § 531.35.

64.     Defendant has violated and continues to violate the FLSA and VMWA by having a policy or practice of requiring Delivery Drivers, as a condition of employment, without full reimbursement, to bear costs required by Defendant for the performance of its work. This policy and practice resulted in and results in Plaintiff and similarly situated employees receiving, in at least some workweeks, less than the minimum wages they are entitled to receive under the FLSA and VMWA, as the costs cut into the minimum wages required to be paid to them.

65.     For example, one method for calculating the costs of vehicle use for Delivery Drivers for FLSA purposes is to use the IRS standard business rate:

30c15     <u>Car expenses: employee's use of personal car on employer's business.</u>

In some cases it is necessary to determine the costs involved when employees use their cars on their employer's business in order to determine minimum wage compliance. For example, car expenses are frequently an issue for delivery drivers employed by pizza or other carry-out type restaurants.

(a)     *As an enforcement policy*, the IRS *standard business mileage rate* found in IRS Publication 917, "Business Use of a Car" may be used (in lieu of actual costs and associated recordkeeping) to determine or evaluate the employer's wage payment practices for FLSA purposes. The IRS standard business mileage rate (currently 28 cents per mile) represents depreciation, maintenance and repairs, gasoline (including taxes), oil, insurance, and vehicle registration fees. In situations where the IRS rate changes during the investigation period, the applicable rates should be applied on a pro-rate basis.

(b)     The IRS standard business mileage rate may be used in lieu of actual costs for FLSA purposes *whether or not* the employee will be able to take a deduction on his or her tax return for the business use of the employee's car.

U.S. Dep't of Labor, Field Operations Handbook 30c15 (2016),

https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/FOH_Ch30.pdf

(emphasis added) Last accessed 1/29/26; U.S. Dep't of Labor, Wage & Hour

Div., Opinion Letter (Aug. 31, 2020), FLSA2020-12 (concluding that "regulations

permit reimbursement of a reasonable approximation of actual expenses

incurred by employees for the benefit of the employer by any appropriate

methodology; the IRS business standard mileage rate is not legally mandated by

[the] regulations but is presumptively reasonable.")

66.    When the "presumptively reasonable" IRS standard business

mileage rate for 2026 ($0.725 per mile) is subtracted from Plaintiff's mileage pay

rate of $0.55, Plaintiff is effectively paid a negative mileage rate of - $0.175 per

mile. In at least some workweeks, Plaintiff's other forms of compensation, mainly

per-stop rates, are not sufficient to bring his effective hourly rate above the

required minimum wage. This is the case even when other methods are used to

reasonably approximately actual expenses. Other Delivery Drivers are paid

similarly.

67.    Upon information and belief, Defendant knowingly misclassified

Delivery Drivers as independent contractors with the intent to lower labor costs

by denying such Delivery Drivers basic rights including overtime wages,

minimum wages, and benefits guaranteed by federal and state law.

68.     Defendant knew Delivery Drivers worked overtime hours without getting paid an overtime premium.

69.     Defendant knew that by not paying Delivery Drivers wages and that by not fully reimbursing Delivery Drivers' costs, their effective hourly pay rates were below minimum wage in at least some workweeks.

70.     Drivers were not employed in any bona fide executive, administrative, or professional capacity.

71.     Plaintiff and his fellow Delivery Drivers performed blue collar, manual work.

72.     Based on the nature of the job duties of Plaintiff and his fellow Delivery Drivers, there is no FLSA or state law exemption that applies to preclude them from being paid minimum wages and overtime wages at one and one-half times their regular rate of pay for all hours worked in excess of 40 per week.

73.     Defendant willfully violated the FLSA and state law by knowingly failing to pay minimum wages and overtime wages to Delivery Drivers.

74.     Defendant knowingly misclassified Delivery Drivers as independent contractors, and had knowledge of the misclassification.

75.     At all relevant times Defendant intended to deprive Plaintiff and similarly situated Delivery Drivers of the minimum wages and/or overtime pay

18

to which they were entitled, or acted with reckless disregard for the rights of Plaintiffs and similarly situated Drivers.

## V.    FLSA COLLECTIVE ACTION ALLEGATIONS

76.    Plaintiff files this statutorily authorized collective action pursuant to 29 U.S.C. § 216(b) as representative plaintiffs on behalf of himself and the FLSA Collective.

77.    Plaintiff is aware of other Delivery Drivers who are similarly situated.

78.    Plaintiff estimates that there may be more (and likely far more) than 200 similarly situated Delivery Drivers who fit the above definition who were deprived of overtime pay by Defendant.

79.    Plaintiff believes that Defendant has misclassified Delivery Drivers as independent contractors within the past three years as part of a common plan or scheme to avoid paying overtime wages, minimum wages, or employment benefits.

80.    Upon information and belief, these Delivery Drivers were paid under a similar pay scheme which deprived them of minimum wages and overtime pay.

81.    These Delivery Drivers perform, and have performed, work which entitles them to payment of overtime compensation that they have not received.

82.     Upon information and belief, Defendant compensated, and continue to compensate, those similarly situated to Plaintiff on a uniform compensation basis.

83.     Defendant's policy of not paying minimum wages and overtime compensation to Delivery Drivers amounted to a willful or reckless disregard of their employees' rights under the FLSA and state law.

84.     Defendant had no good faith basis to believe that these employees were not entitled to minimum wages and overtime under the FLSA and state law.

85.     Plaintiff asserts that Defendant's willful disregard of the overtime laws described herein entitles Plaintiff and similarly situated employees to the application of the three (3) year limitations period.

86.     Plaintiff's job duties, and the job duties of those similarly situated to Plaintiff, are not exempt from the coverage of the FLSA.

87.     At all relevant times, Plaintiff and other similarly situated employees have been entitled to the rights, protections, and benefits provided under the FLSA.

88.     Defendant is liable under the FLSA for failing to properly compensate Plaintiff and the FLSA Collective, and as such, notice should be sent to the Collective. There are numerous similarly situated current and former

employees of Defendant who have been denied minimum wages and overtime pay in violation of the FLSA and state law who would benefit from the issuance of Court-supervised notice of this lawsuit and the opportunity to join.

89.    Plaintiff hereby files his written consent to join a collective action under federal and state laws. Plaintiff's written consent forms are attached as **Exhibit 1**.

## VI.    CLASS ACTION ALLEGATIONS

90.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the VOWA/VMWA and VML Classes.

91.    <u>Numerosity</u>:      Upon information and belief, the Classes are so numerous that joinder of all members is impracticable. Plaintiffs are informed and believe that during the relevant time period, Defendant employed more than 40 individuals who satisfy the definitions of each Class.

92.    <u>Typicality</u>:   Plaintiffs' claims are typical of the Classes. The claims are based on Defendant's corporate policy and practice of misclassifying Drivers as independent contractors to avoid paying benefits, minimum wages, and overtime compensation to Plaintiffs and similarly situated employees. This is a centralized pay policy and practice, and applicable to all locations where the Classes worked.

93.    Superiority: A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage litigation where individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits in federal court against large corporate defendants.

94.    Adequacy:  Plaintiff will fairly and adequately protect the interests of the Classes and has retained counsel experienced in complex wage and hour class and collective action litigation.

95.    Commonality:    Common questions of law and fact exist to all members of the Classes and predominate over any questions solely affecting individual members of the Classes, including but not limited to:

a.    Whether Defendant's policy and practice of not paying overtime compensation violates VOWA and/or the VML.

b.    Whether Defendant's policy and practice of not paying minimum wages after accounting for the costs required to be borne by Delivery Drivers in performing Defendants' work violates VMWA and/or the VML.

c.    Whether Defendant is/was an "employer" of Plaintiff and the Classes within the meaning of VOWA, VMWA, and/or the VML.

d.    Whether Defendant misclassified Plaintiff and the Classes

22

within the meaning of the VML.

      e.    Whether Defendant had knowledge of any misclassification within the meaning of the VML.

      f.    The proper measure of damages sustained by Plaintiff and the Classes.

96.    This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the Classes would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendant. Further, adjudication of each individual member's claim as a separate action would be dispositive of the interest of other individuals not party to this action, impeding their ability to protect their interests.

97.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Classes predominate over any questions only affecting individual members of the each Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's common and uniform policies and practices denied the members of the Classes the overtime wages and benefits of employment to which they are entitled under Virginia law. The damages suffered by the individual Class members are small compared to the expense and

burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

98.    Plaintiff intends to send notice to all members of the Classes to the extent required by Rule 23. The names and addresses of class members should be available from Defendant.

99.    Plaintiff reserves the right to propose amended class definitions and/or sub-classes in his motions for collective action and class action certification.

100.    Defendant employs, and has employed, multiple persons who fit the VOWA/VMWA and VML Class definitions who due to Defendant's policies and practices described herein were deprived of minimum wages, deprived of overtime pay when they worked in excess of 40 hours each week, and who were deprived the benefits of being classified as employees. These individuals perform, and have performed, work which entitles them to payment of minimum wage and overtime compensation which they have not received and further entitle them to employment benefits that have been heretofore, unreceived.

101.    Defendant's policy of misclassifying Delivery Drivers as independent contractors and not paying the required minimum wages and

overtime compensation amounted to a willful or reckless disregard of the employees' rights under state law.

102.    Defendant had no good faith basis to believe that not paying these employees minimum wages, overtime wages and/or not treating them as employees was somehow allowable under state law.

103.    Defendant's policy of not paying the required overtime compensation amounts to a knowing failure to pay wages as required by the VOWA.

## VII.    CLAIMS AND RELIEF

### COUNT 1: VIOLATIONS OF FAIR LABOR STANDARDS ACT
#### (Overtime Violations, 29 U.S.C. § 207)
#### (On Behalf of Plaintiff and FLSA Collective)

104.    Plaintiff alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

105.    At all times relevant herein, Defendant has been, and continues to be, an "employer," and Plaintiff and each similarly situated employees has been, or continues to be, an "employee" within the meaning of 29 U.S.C. §§ 203(d) and (e).

106.    The FLSA requires covered employers to compensate all non-exempt employees at a rate not less than one and one-half times their regular rate of pay for work performed in excess of 40 hours per workweek. 29 U.S.C. § 207.

As such, Plaintiff and the FLSA Collective are entitled to overtime compensation at one and one-half times their regular rate of pay for work performed in excess of 40 hours per workweek.

107.    By failing to pay overtime compensation to Plaintiff and the FLSA Collective when they work more than 40 hours in a workweek, Defendants has violated, and continues to violate the FLSA.

108.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

109.    Plaintiff seeks damages for himself and all others similarly situated in the amount of Plaintiff's and each similarly situated employee's unpaid overtime wages, an equal amount as liquidated damages, interest, all costs and attorneys' fees incurred in investigating and prosecuting this claim, all other relief available under the FLSA, and all other such legal and equitable relief as the Court deems just and proper.

### COUNT 2: VIOLATIONS OF FAIR LABOR STANDARDS ACT
**(Minimum Wage Violations, 29 U.S.C. § 206 – Free and Clear Claim)**
**(On Behalf of Plaintiff and FLSA Collective)**

110.    Plaintiff alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

111.    The FLSA requires covered employers, such as Defendant, to compensate all non-exempt employees at a minimum wage rate of not less than

$7.25 per hour. 29 U.S.C. § 206. As such, Plaintiff and the FLSA Collective are entitled to a minimum wage of $7.25 per hour for all work performed.

112.    Defendant violated and continues to violate the FLSA through its policy and practice of requiring Plaintiff and the FLSA Collective to use their personal vehicles to perform Defendant's work while failing to fully reimburse Plaintiff and the FLSA Collective for the costs of performing their work for Defendant. These costs include gas, vehicle maintenance and depreciation, and insurance. When these costs are subtracted from the amounts paid to Plaintiff and similarly situated employees in at least some workweeks, their effective hourly pay falls below the required minimum wage. *See* 29 C.F.R. § 531.35.

113.    Through this practice, Defendant paid and continues to pay these employees less than the minimum wages it is required to pay under the FLSA.

114.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

115.    Plaintiff seeks damages for himself and all others similarly situated in the amount of Plaintiff's and each similarly situated employee's unpaid minimum wages, an equal amount as liquidated damages, interest, all costs and attorneys' fees incurred in investigating and prosecuting this claim, all other relief available under the FLSA, and all other such legal and equitable relief as the Court deems just and proper.

**COUNT 3: VIOLATIONS OF VIRGINIA OVERTIME WAGE ACT**
**(Overtime Violations, Va. Code § 40.1-29.2)**
**(On Behalf of Plaintiff and VOWA/VMWA Class)**

116.    Plaintiff alleges and incorporates by reference the preceding

paragraphs as if fully set forth herein.

117.    Plaintiff brings this VOWA count as a class action under Federal

Rule of Civil Procedure 23, on behalf of himself and the Class. In the alternative,

Plaintiff brings this VOWA count as a collective action under VOWA, Va. Code §

40.1-29.2, and Va. Code § 40.29(J), on behalf of himself and the Virginia Class.

118.    At all times relevant, Defendant has been, and continues to be, an

"employer," and Plaintiff and each similarly situated Driver, has been, or

continues to be, an "employee" within the meaning of VOWA.

119.    At all times relevant, VOWA has required employers, including

Defendant, to compensate all non-exempt employees at a rate not less than one

and one-half times their regular rate of pay for work performed in excess of 40

hours per workweek.

120.    Since 2022 amendments to VOWA, VOWA has mirrored

requirements of the FLSA on this issue: "Any employer that violates the

overtime pay requirements of the federal Fair Labor Standards Act of 1938, 29

U.S.C. § 201 et seq., as amended, and any regulations, guidance, or rules adopted

pursuant to the overtime pay provisions of such federal act or any related governing case law shall be liable to the employee for the applicable remedies, damages, or other relief available under the federal Fair Labor Standards Act in an action brought pursuant to the process in subsection J of § 40.1-29...." Va. Code § 40.1-29.2.

121.    By failing to pay overtime compensation to Plaintiff and the Class when they work more than forty hours in a workweek, Defendant has violated, and continues to violate VOWA.

122.    Plaintiff seeks damages in the amount of unpaid overtime wages, an equal amount as liquidated damages, interest, all costs and attorneys' fees incurred in investigating and prosecuting this claim, all other relief available under VOWA, and all other such legal and equitable relief as the Court deems just and proper.

### COUNT 3: VIOLATIONS OF VIRGINIA MINIMUM WAGE ACT
#### (Overtime Violations, Va. Code § 40.1-28.8 et seq.)
#### (On Behalf of Plaintiff and VOWA/VMWA Class)

123.    Plaintiff alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

124.    Plaintiff brings this VMWA count as a class action under Federal Rule of Civil Procedure 23, on behalf of himself and the Class.

125.    At all times relevant, Defendant has been, and continues to be, an

"employer," and Plaintiff and the Class has been, and/or continues to be, each an "employee" within the meaning of the VMWA, Va. Code § 40.1-28.9.

126.    The VMWA requires, "A. 1. Prior to May 1, 2021, every employer shall pay to each of its employees wages at a rate not less than the federal minimum wage." The VMWA further provides, "B. From May 1, 2021, until January 1, 2022, every employer shall pay to each of its employees wages at a rate not less than the greater of (i) $9.50 per hour or (ii) the federal minimum wage. C. From January 1, 2022, until January 1, 2023, every employer shall pay to each of its employees wages at a rate not less than the greater of (i) $11.00 per hour or (ii) the federal minimum wage. D. From January 1, 2023, until January 1, 2025, every employer shall pay to each of its employees wages at a rate not less than the greater of (i) $12.00 per hour or (ii) the federal minimum wage. E. E. From and after January 1, 2025, every employer shall pay to each of his employees wages at a rate not less than the greater of (i) the adjusted state hourly minimum wage or (ii) the federal minimum wage." Va. Code § 40.1-28.10.

127.    The adjusted Virginia state minimum wage for the year 2025 was $12.41. The adjusted Virginia state minimum wage for the year January 1, 2026 until January 1, 2027 is $12.77. *See* https://doli.virginia.gov/2025/07/29/virginia-minimum-wage-rate-increasing-effective-january-1-2026/ last accessed 1/29/2026.

128.    As such, Plaintiff and the Class are entitled to minimum wages as required by the VMWA.

129.    Defendant violated and continues to violate the VMWA through its policy and practice of requiring Plaintiff and the Class to use their personal vehicles to perform Defendant's work while failing to pay Plaintiff and the Class any wages and by failing to fully reimburse them for their costs of performing their work for Defendant. These costs include gas, vehicle maintenance and depreciation, and insurance, among other costs. When these costs are subtracted from the wages paid to Plaintiff and similarly situated employees in at least some workweeks, their effective hourly pay still falls below the required minimum wage.

130.    By failing to pay the required minimum wages to Plaintiff and the Class, Defendant violated the VMWA.

131.    The VMWA provides, "Any employer who violates the minimum wage requirements of this law shall be liable to the employee or employees affected in the amount of the unpaid minimum wages, plus interest at eight per centum per annum upon such unpaid wages as may be due the plaintiff, said interest to be awarded from the date or dates said wages were due the employee or employees. The court may, in addition to any judgment awarded to the employee or employees, require defendant to pay reasonable attorney's fees

31

incurred by the employee or employees." Va. Code § 40.1-28.12.

132.    Plaintiff seeks damages in the amount of the unpaid minimum wages, plus interest at eight per centum per annum upon such unpaid wages, said interest to be awarded from the date or dates said wages were due the employee or employees, as well as reasonable attorney's fees and costs, all other relief available under the VMWA, and all other such legal and equitable relief as the Court deems just and proper.

### COUNT 4: VIOLATIONS OF VIRGINIA MISCLASSIFICATION LAW
### (Va. Code § 40.1-28.7:7)
### (On Behalf of Plaintiff and VML Class)

133.    Plaintiff alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

134.    Plaintiff brings this VML count as a class action under Federal Rule of Civil Procedure 23, on behalf of himself and the VML Class.

135.    The Virginia Misclassification Law ("VML"), Va. Code § 40.1-28.7:7, provides that "[a]n individual who has not been properly classified as an employee may bring a civil action for damages against his employer for failing to properly classify the employee if the employer had knowledge of the individual's misclassification."

136.    At all times relevant, each Defendant has been, and continues to be, an "employer," and Plaintiff and each member of the VML Class, has been, or

continues to be, an "employee" within the meaning of the VML.

137.    The VML, VA Code § 40.1-28.7:7 further provides that "[i]f the court finds that the employer has not properly classified the individual as an employee, the court may award the individual damages in the amount of any wages, salary, employment benefits, including expenses incurred by the employee that would otherwise have been covered by insurance, or other compensation lost to the individual, a reasonable attorney fee, and the costs incurred by the individual in bringing the action."

138.    Defendant improperly classified Plaintiff and similarly situated individuals as independent contractors rather than employees, resulting in damages to Plaintiff and similarly situated employees and a denial to Plaintiff and similarly situated individuals of wages, salaries, and other employment benefits including insurance coverage and insurance benefits (including unemployment insurance benefits), employer-side payroll taxes, and other benefits which they would have been entitled to receive if they had been properly classified as employees. Defendant had knowledge of the misclassification. Plaintiff for himself and similarly situated employees seeks all relief allowed by law for Defendant's violation of the VML.

## FLSA Collective Relief Requested

Wherefore, Plaintiff on behalf of himself and all members of the FLSA

Collective requests the following Relief against Defendant:

A.     An order conditionally certifying a group or groups of putative collective action members and approving a notice to be sent to all such members, notifying them of this representational lawsuit and their ability to file a written consent to join in this action without threat or fear of reprisal;

B.     Judgment that Plaintiff and all similarly situated Drivers were non-exempt employees entitled to protection under the FLSA;

C.     Judgment against Defendant for violations of the overtime wage provisions of the FLSA;

D.     Judgment that Defendant's violations as described above were willful;

E.     Money damages for all unpaid overtime wages;

F.     Liquidated damages in an amount equal to all unpaid overtime wages owed to Plaintiff and similarly situated employees;

G.     Pre-judgment and post-judgment interest;

H.     Reasonable attorneys' fees and costs including expert fees expended in the prosecution of this case and the investigation that preceded it;

I.     Leave to amend to bring additional claims and/or parties, including but not limited to additional claims for retaliation and/or unpaid overtime or minimum wages under the FLSA or other applicable law; and

J.      Any and all further relief permissible by law.

**VOWA, VMWA and VML Class Relief Requested**

Wherefore, Plaintiff on behalf of himself and all members of the VOWA/VMWA and VML Classes requests the following Relief against Defendants:

A.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.      Designation of Plaintiff as representative of the VOWA/VMWA and VML Classes and counsel of record as class counsel;

C.      Unpaid overtime wages, unpaid minimum wages, liquidated and/or triple damages, injunctive relief, and attorney's fees and costs pursuant to Virginia law;

D.      Judgment that Plaintiff and all similarly situated workers were non-exempt employees entitled to protection under VOWA, VMWA, and VML;

E.      Judgment against Defendant for violations of the overtime wage requirements of the VOWA, the minimum wage requirements of the VMWA, and for violation of the VML;

F.      Judgment that Defendant's violations as described above were willful;

G.      Judgment that Defendant had knowledge of the misclassification of

35

Plaintiff and the other members of the VOWA/VMWA and VML Classes;

H.    Money damages for all unpaid minimum wages and overtime wages;

I.    Liquidated damages in an amount equal to all unpaid minimum and overtime wages owed to Plaintiffs and similarly situated employees, and/or triple damages to the full extent allowed by law;

J.    Pre-judgment and post-judgment interest;

K.    Reasonable attorneys' fees and costs including expert fees expended in the prosecution of this case and the investigation that preceded it;

L.    All relief allowed by the VML including "damages in the amount of any wages, salary, employment benefits, including expenses incurred by the employee that would otherwise have been covered by insurance, or other compensation lost to the individual, a reasonable attorney fee, and the costs incurred by the individual in bringing the action." Va. Code §40.1-28.7:7(A).

M.    Leave to amend to bring additional claims and/or parties, including but not limited to additional claims for retaliation and/or unpaid minimum, regular or overtime wages under VOWA, VMWA, VML, or other applicable law;

N.    Any and all further relief permissible by law.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury

trial for all claims and issues so triable.

Respectfully submitted,

THOMAS CLINE,
individually and on behalf of all others similarly situated,
By Counsel

___/s/ Jordan Richards_____
Jordan Richards (FL Bar No. 108372)
Jordan Richards, PLLC
1800 Southeast 10th Ave, Suite 205
Fort Lauderdale, FL 33316
(954) 871-0050
jordan@jordanrichardspllc.com

/s/Zev Antell_____
Zev Antell (VSB No. 74634)
*Pro Hac Vice to be Filed*
ButlerCurwood, PLC
140 Virginia Street, Suite 302
Richmond, VA 23219
804.648.4848
zev@butlercurwood.com

/s/Timothy Coffield_____
Timothy Coffield (VSB 83430)
*Pro Hac Vice to be Filed*
Coffield PLC
106-F Melbourne Park Circle
Charlottesville, VA 22901
p: (434) 218-3133  f: (434) 321-1636
tc@coffieldlaw.com

Lead Counsel for Plaintiff